UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LATASHA LEE, O.B.O. R.L.             CIVIL ACTION NO. 11-cv-0910

versus                                JUDGE HICKS

COMMISSIONER, SOCIAL                  MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

R.L. was born in May 2003. His mother, Latasha Lee (Ms. Lee or Plaintiff), filed on his behalf an application for Supplemental Security Income in December 2008, when R.L. was a pre-schooler. ALJ Raymond F. Gollmitzer issued a decision that R.L. was not disabled within the meaning of the regulations. The Appeals Council denied review, resulting in a final decision by the Commissioner. Ms. Lee filed this appeal. For the reasons that follow, the Commissioner's decision will be affirmed.

**The ALJ's Findings**

A child is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or last a continuous period of at least one year. 42 U.S.C. §1382(c)(a)(3)(C)(I). The Commissioner has published regulations to implement that standard. They require a three-step evaluation process. 20 C.F.R. §416.924.

The first step is to determine whether the child has engaged in substantial gainful activity. If not, the evaluation continues to the second step, which involves a determination of whether the child has an impairment or combination of impairments that is "severe", meaning more than a slight abnormality that causes only minimal functional limitation. The third step involves a determination of whether the child's impairments meet, medically equal, or functionally equal in severity a listed impairment. §416.924a(d). If so, and the twelve month durational requirement is met, the child is disabled. If not, the child is not disabled. §416.924(d)(1) and (2).

The ALJ found that R.L. passed the first two steps of the evaluation because (1) he had not been working and (2) he suffered from severe impairments in the form of attention deficit hyperactivity disorder (ADHD) and speech intelligibility below normal limits (60% - 75%). (Tr. 30). He found at step three that R.L.'s impairments did not meet or medically equal a listed impairment, a finding which is not specifically challenged. He then proceeded to determine whether R.L. has impairments that functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for yourself

(6) health and physical well-being.

§416.926a(b)(1). The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. A marked limitation is "more than moderate" but "less than extreme." It interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. §416.926a(e)(2).

The child will be considered disabled if he has an extreme limitation in one domain or a *marked limitation in two domains*. §416.926a(d). The ALJ considered evidence that included an opinion from state agency psychologist Dr. Cheryl Marsiglia, interrogatory answers from board-certified child psychiatrist Dr. Barbara Felkins, a consultative report from psychologist Robert Krenek, Jr, Ph.D., and information from a teacher. The ALJ found that R.L. had no limitation in the domains of moving about and manipulating objects and health and physical well-being. He found that the child had a "less than marked" limitation in the other domains. Particular weight was afforded various aspects of the opinions of Drs. Marsiglia and Felkins.

**Issues on Appeal**

Ms. Lee assigned two issues for appeal. She first argues that Dr. Marsiglia's finding of marked limitations on the ability to interacting and relating with others – but not in the abilities to acquire and use information and attend to and complete tasks – is not based on

substantial evidence. She next contends that the answers by Dr. Felkins – who found no marked limitations – are not based on substantial evidence.

**Standard of Review**

This court's standard of review of the ALJ's decision is limited. Appellate relief is available only when (1) there is a lack of "substantial evidence" to support the ALJ's determination or (2) the ALJ's decision does not comport with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

Celia Mangham, a teacher at a local elementary school, completed a teacher questionnaire in March of 2009, when R.L. was not quite six years old. She checked boxes on the form to indicate the level of problem the child had in various areas. The levels of problem are no, slight, obvious, serious, and very serious. Relevant to acquiring and using information, she checked boxes to indicate that the child had an obvious problem comprehending oral instructions, reading and comprehending written material, understanding and participating in class discussions, and expressing ideas in written form. She indicated that he had a serious problem doing math problems and providing organized oral

Page 4 of 10

explanations and adequate descriptions. With respect to attending and completing tasks, she indicated a serious problem refocusing when necessary, changing from one activity to another, and working without distracting himself or others. In the domain of interacting and relating with others, she indicated a serious problem in matters such as seeking attention or expressing anger appropriately, an obvious problem relating experiences and telling stories, but no problem using appropriate language and adequate vocabulary and grammar to express thoughts in general, everyday conversation. She noted that the child had to be placed in time out several times daily. She also indicated that she could understand almost all (the highest category) of the child's speech on the first attempt when the topic of the conversation was known, and one-half to two-thirds of the time when the topic was unknown. After repetition or rephrasing, she could understand almost all. Tr. 161-68.

Kimberly Wardell, a speech and language pathologist, evaluated the child in February 2009. She noted that the child, who was born one month early and had been generally delayed in his development, was not then taking any medication or receiving speech therapy in the school system. He did receive speech therapy at home from the age of six months until three years. His scores in auditory comprehension and expressive communication were normal for his age, but his speech intelligibility was below normal limits. His speech was described as very "choppy" and, although 100% intelligible in single words, sentences were only 75% intelligible to an unknown ear when the context was known. She recommended speech therapy to improve intelligibility. Tr. 201-203.

Dr. Robert Krenek, Jr., PhD., a licensed psychologist, evaluated R.L. at the request of the Agency in April 2009. The child had a IQ score of 84, which is in the low average range of overall intellectual functioning. R.L. sustained concentration and persisted throughout the evaluation. Dr. Krenek found that the child's adaptive functioning, communication, socialization, and daily living skills "appear somewhat deficient." He diagnosed ADHD and observed that the child had difficulty pronouncing multi-syllable words, with about 75% of his speech understandable. Dr. Krenek stated that the child would probably benefit from speech/language therapy, and he recommended medication to address attention and behavior problems. Tr. 207-10.

Dr. Cheryl Marsiglia, a state agency psychologist, evaluated the records (but not the child) and completed an evaluation form. She found a marked limitation in interacting and relating with others, which she attributed to behavioral and social deficits consistent with language deficits and ADHD. She found less than marked limitations in acquiring and using information and attending and completing tasks. She noted problems regarding poor concentration and distractibility, as well as language delays, that affected these domains. Tr. 212-219.

Records from LSU Health Sciences Center indicate that the child was prescribed Methylin (an ADHD medication) in August 2009. Tr. 226. Two weeks later, his mother stated that he was "doing good" with the medication and that his teacher reported the same. The mother still expressed concern about speech problems. Tr. 224.

Dr. Barbara Felkins, a child psychiatrist, answered written interrogatories about the case in November 2009. She never personally examined the child but did review his medical records. She found that the records showed ADHD and speech intelligibility below normal limits, but she questioned the weight of the evaluation by a teacher who had known the child only one month, and she opined that the cause of the intelligibility issues was unclear. She found less than marked limitation in acquiring and using information, noting the lack of educational testing or more detailed school reporting to suggest a greater limitation. She also noted that the child's IQ is in the 80's. Dr. Felkins found a less than marked limitation in attending and completing tasks. She pointed out that the child had only recently been placed on Ritalin-like medicine, on which he was already doing well, and which she expected to improve the child's condition. She found no or less than marked limitations in the other domains, based on essentially these same reasons. She stated that children such as R.L. are relatively common and often improve greatly with speech therapy, medication and maturation. Tr. 235-40.

**Analysis**

The ALJ stated that he afforded "great weight" to the assessment of Dr. Marsiglia because her determination was consistent with the entirety of the evidence, except that he afforded only limited weight to Marsiglia's finding that R.L. had a marked limitation in the ability to interact and relate to others. He cited additional evidence submitted at the hearing level, presumably Dr. Felkins' report, that showed the child was not as limited in that area

as originally determined. He also afforded great weight to the opinion of Dr. Felkins, with the observation that it was consistent with the totality of the record. Tr. 32.

Plaintiff, rather than argue that the ALJ's decision is not supported by substantial evidence, attempts to divide the underlying opinions and attack aspects of each opinion as not supported by substantial evidence. Plaintiff embraces Dr. Marsiglia's finding of a marked limitation in one domain, but argues that Marsiglia should have – based on the teacher evaluation – also found marked limitations in two other domains. As for Dr. Felkins, Plaintiff faults a lack of specificity in her report regarding the severity level of ADHD and lack of complete answers to every aspect of the interrogatories. Plaintiff also faults Dr. Felkins for stating that the cause of the intelligibility issues was unclear, when the record contained Ms. Wardell's report that the child did not open his mouth or move it effectively, which compromised his speech intelligibility.

The regulations require that an impairment result from abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. The evidence may contain medical opinions in the form of statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the impairment. 20 C.F.R. § 404.1527(a). The ALJ, in weighing the opinions, looks to factors including supportability by other medical evidence, consistency with the record as a whole, specialization, and treatment relationship. Section 404.1527(c) and (e). The courts have long recognized that the ALJ "is entitled to determine the credibility of

medical experts as well as lay witnesses and weigh their opinions accordingly." Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

Despite the best efforts of those who draft the regulations to make disability decisions objective, there will almost always be a degree of subjectivity and judgment inherent in determining whether someone's limitation is marked or less than marked. The ALJ looked to evidence from medical professionals, a teacher, and the parent. He discussed all of that evidence in significant detail (Tr. 31-32) and afforded the opinions' weight based on how consistent he found them to be with the overall record.

Plaintiff complains that a proper weighing of the opinions of the professionals should have resulted in findings of greater degree of limitation. None of the various reports or opinions may be perfect, but together they provide more than enough to meet the substantial evidence standard, which requires that this court affirm the Commissioner's decision. To warrant judicial relief, the court would have to find that the evidence was so compelling in favor of the claimant that the ALJ was required to find marked limitations in two domains, when he found none in his actual opinion. The evidence is not so compelling. One may make reasonable arguments that the evidence should have been assessed differently in the first instance, but those arguments are beyond the limited role of the court in the review process.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of January, 2013.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE